IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> U.S. Steel Corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) <br> ) **COMPLAINT** <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) |

NATURE OF THE ACTION

This is an action under the Pregnant Workers Fairness Act ("PWFA") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to an employee who has been adversely affected by such practices ("Aggrieved Individual"). As described with greater particularity below, Defendant US Steel, ("US Steel" or "Defendant") violated the PWFA when it failed to reasonably accommodate the Aggrieved Individual's known limitations related to pregnancy, required her to accept an accommodation not arrived at through an interactive process, denied her employment opportunities because of the need to accommodate her pregnancy, required her to take leave when other accommodations were available, and retaliated against her.

JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 104 of the PWFA, 42 U.S.C. § 2000gg-2(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Minnesota.

## PARTIES

3. Plaintiff United States Equal Employment Opportunity Commission ("EEOC" or "Commission") is the agency of the United States of America charged with the administration, interpretation, and enforcement of the PWFA, and is expressly authorized to bring this action pursuant to Section 104(a) of the PWFA, 42 U.S.C. § 2000gg-2(a).

4. Defendant is a steel company with multiple domestic and international facilities including iron mining facilities located in the State of Minnesota.

5. At all relevant times, Defendant has continuously been a Pennsylvania Corporation doing business in the State of Minnesota and the City of Mountain Iron.

6. At all relevant times, Defendant has continuously had at least fifteen (15) employees.

7. Throughout 2022 and 2023, Defendant continuously had more than 500 employees.

8. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 102(2)(B)(i) of the PWFA, 42 U.S.C. § 2000gg(2)(B)(i).

9. At all relevant times, Defendant has been a covered entity under Section 102(2) of the PWFA, 42 U.S.C. § 2000gg(2).

## ADMINISTRATIVE PROCEDURES

10. More than thirty days prior to the institution of this lawsuit, EEOC Charge No. 444-2024-00970 was filed with the Commission alleging violations of the PWFA by Defendant.

11. On July 11, 2025, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated the PWFA when it denied the Aggrieved Individual accommodation of known limitations related to pregnancy; required her to

2

accept accommodations not arrived at through the interactive process; denied her employment opportunities because of the need for an accommodation; required her to take leave; and retaliated against her for engaging in protected activity in violation of the PWFA.

12. The Commission invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

13. The EEOC engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

14. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC.

15. On July 28, 2025, the Commission issued Defendant a Notice of Failure of Conciliation.

16. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

17. Defendant hired the Aggrieved Individual in 2012. Since approximately 2018, the Aggrieved Individual worked for Defendant as a Mobile Equipment Operator ("MEO") at Defendant's Minntac mine, located near Mountain Iron, Minnesota.

18. Minntac is a large, open-pit mine. It produces taconite, an iron-rich ore used in steelmaking.

19. MEOs operate multiple types of heavy machinery to extract, move, and process large quantities of the ore.

20. As an MEO, the Aggrieved Individual worked as part of a crew of approximately 60-70 workers.

21. In the period leading up to her pregnancy, the Aggrieved Individual typically

operated the cleanup loader, a type of heavy, tracked machinery.

22. The Aggrieved Individual was qualified to operate — and had in fact operated — all of the various types of equipment that MEOs used.

23. The Aggrieved Individual's supervisors and coworkers considered her to be among the crew's most skilled and reliable MEOs.

24. As a result, the Aggrieved Individual's supervisors frequently tapped her to serve as "fill-in" team lead, when one of the two regular team leads was unavailable.

25. The team lead job is a non-management position with responsibilities for coordinating and assigning mine work tasks to the crew.

26. Filling in as team lead was one of a few MEO assignments that carried an increased hourly rate of pay.

27. An MEO crew's work also included a variety of tasks, and MEOs were not all assigned the same tasks.

28. Some MEO assignments did not involve operating heavy machinery.

29. MEO work that did not involve operating heavy machinery was often assigned to MEOs who were injured and in need of "light duty" work.

30. The Aggrieved Individual became pregnant in or about August 2023.

31. The Aggrieved Individual's healthcare providers advised that she avoid rough, abrupt, or violent movements, which could harm the pregnancy, and provided a doctor's note explaining that the Aggrieved Individual "is not able to operate heavy machinery, tracked vehicles and drive production trucks for the remainder of the pregnancy."

32. In or about August 2023, the Aggrieved Individual informed her immediate co-workers about her pregnancy and pregnancy-related limitations.

33. The Aggrieved Individual's team lead accommodated her by shifting the most

physically demanding work tasks to other crew members, and keeping her assigned to MEO tasks that appeared to be consistent with her restrictions.

34. On October 10, 2023, the Aggrieved Individual informed her shift manager of her pregnancy, provided a copy of her doctor's note, and requested an accommodation consistent with her pregnancy-related limitations.

35. Defendant's managers decided on October 10 or 11, 2023, that the Aggrieved Individual's known limitations related to pregnancy could not be accommodated.

36. On October 11, 2023, Defendant placed the Aggrieved Individual on short-term sickness and accident leave ("S&A leave").

37. Prior to deciding to place the Aggrieved Individual on leave, Defendant did not discuss that decision with the Aggrieved Individual or otherwise engage in an interactive process to identify reasonable accommodations other than leave.

38. S&A leave pays employees at a lower rate than their base earnings and does not provide compensation for lost overtime, lost shift differential pay, or lost profit-sharing that is available to employees who are working.

39. From October 11, 2023, to approximately November 7, 2023, the Aggrieved Individual sought to return to work, and proposed several reasonable accommodations, such as filling in as team lead, working control/dispatch, conducting training and safety work, or providing other work supporting the mine crew.

40. On November 1, 2023, the Aggrieved Individual's medical provider provided Defendant with an updated medical restrictions letter, explaining the reasons for the restrictions, and adding a 20-pound pushing, pulling, and lifting restriction.

41. From October 11, 2023, to approximately November 7, 2023, Defendant did not agree to let the Aggrieved Individual to return to work unless she accepted roles that paid

5

substantially less than the MEO position, violated her medical restrictions, or both.

42. On or about November 9, 2023, Defendant allowed the Aggrieved Individual to return to work as an MEO, and instructed her to operate the crew's fuel truck.

43. The fuel truck is a large piece of equipment that fuels other machinery across the mine pit. Operating the fuel truck involved jarring movements and heavy lifting contrary to the Aggrieved Individual's pregnancy-related medical restrictions against operating heavy machinery. It also placed her in immediate proximity to fuel and exhaust fumes for the entire duration of her work shift.

44. The Aggrieved Individual returned to work as an MEO on November 9, 2023.

45. As before, the Aggrieved Individual's immediate supervisors and coworkers informally accommodated her by reallocating job tasks among the crew's approximately 60-70 members and assigning her work other than driving the fuel truck. For example, her supervisors and team lead assigned the Aggrieved Individual support and coordination work that was compatible with her restrictions.

46. On or about November 15, 2023, Defendant's management discovered that the Aggrieved Individual was being informally accommodated on the job. Management insisted that the informal accommodations end, and that the Aggrieved Individual drive the fuel truck.

47. On or about November 15, 2023, the Aggrieved Individual and her union representative met with members of Defendant's management. At the meeting, Defendant agreed to assign the Aggrieved Individual to light duty work in an office.

48. The light duty office work denied the Aggrieved Individual the opportunity to take on MEO assignments that carried a higher rate of pay or greater overtime.

49. Defendant assigned the Aggrieved Individual to perform light duty work in an office that was missing walls due to ongoing renovation, and which exposed her to cold air and

6

dust. Others in the same office area were provided warming vests, but the Aggrieved Individual was not.

50. The Aggrieved Individual experienced a miscarriage on or about January 2, 2024.

51. After the miscarriage, the Aggrieved Individual took two weeks of bereavement leave and returned to work in mid-January 2024.

52. After the Aggrieved Individual returned to work in January 2024, Defendant did not assign her to work as a fill-in team lead again, as she had frequently done prior to her requests for accommodations, even though she was qualified to do so and numerous opportunities were available.

53. After the Aggrieved Individual returned to work, Defendant removed her from her longtime assignment as MEO cleanup loader, and moved her to a series of more difficult, less desirable, and remote jobs within the mine, some of which lacked appropriate restroom facilities for women.

54. The Aggrieved Individual objected, during and after her pregnancy, to Defendant's failure to accommodate her pregnancy-related limitations and other PWFA violations, both by speaking with or submitting complaints to Defendant's managers and other officials, as well as by filing a charge with the EEOC.

55. At all relevant times, the Aggrieved Individual was a qualified employee as defined by Section 102(6) of the PWFA, 42 U.S.C. § 2000gg(6), in that she was able to perform the essential functions of the MEO job with or without reasonable accommodation — or, to the extent she was unable to perform any essential function, that inability was temporary, she could perform the essential function again in the near future (after her pregnancy), and the temporary inability could be reasonably accommodated.

## STATEMENT OF CLAIMS

56. Beginning in approximately October 2023, Defendant engaged in unlawful employment practices in violation of Section 103(1) of the PWFA, 42 U.S.C. § 2000gg-1(1), by failing to make reasonable accommodations to the Aggrieved Individual's known pregnancy-related limitations. In particular:

    a) The Commission repeats and incorporates herein Paragraphs 1-54, above.

    b) During her pregnancy, the Aggrieved Individual could have continued to work in the MEO position with reasonable accommodations, such as temporarily reallocating work among MEOs so that the Aggrieved Individual was assigned a larger share of MEO work that was consistent with her restrictions.

    c) Instead, Defendant removed her from the workplace, placed her on an involuntary leave of absence, and ultimately placed her in a light duty office job that, among other things, reduced her earnings potential.

    d) In so doing, Defendant failed to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of the Aggrieved Individual.

57. Beginning in approximately October 2023, Defendant engaged in unlawful employment practices in violation of Section 103(2) of the PWFA, 42 U.S.C. § 2000gg-1(2), by requiring the Aggrieved Individual to accept an accommodation that was not arrived at through the interactive process. In particular:

    a) The Commission repeats and incorporates herein Paragraphs 1-56, above.

    b) After the Aggrieved Individual notified Defendant's upper management of her pregnancy-related restrictions and requested an accommodation, Defendant immediately placed her in an involuntary leave of absence.

    c) Defendant did not use an interactive process prior to deciding to place the

Aggrieved Individual on leave.

58. Beginning in approximately October 2023, Defendant engaged in unlawful employment practices in violation of Section 103(4) of the PWFA, 42 U.S.C. § 2000gg-1(4), by requiring the Aggrieved Individual to take leave when another reasonable accommodation could have been provided. In particular:

    a) The Commission repeats and incorporates herein Paragraphs 1-57, above.

    b) Defendant required the Aggrieved Individual to take S&A leave after its upper management became aware of her pregnancy-related limitations.

    c) As alleged more fully above, Defendant could have provided other reasonable accommodations to the Aggrieved Individual's pregnancy-related limitations.

59. Beginning in approximately November 2023, Defendant engaged in unlawful employment practices in violation of Section 103(3) of the PWFA, 42 U.S.C. § 2000gg-1(3), by denying the Aggrieved Individual employment opportunities based on the need to make reasonable accommodations to her known pregnancy-related limitations. In particular:

    a) The Commission repeats and incorporates herein Paragraphs 1-58, above.

    b) After the Aggrieved Individual continued to pursue accommodations in the MEO role, Defendant removed her from that role and placed her in a menial office job that, among other things, reduced her earnings potential.

    c) In so doing, Defendant denied the Aggrieved Individual employment opportunities based on the need to make reasonable accommodations to her pregnancy-related limitations.

60. Beginning in approximately January 2024, Defendant engaged in unlawful employment practices in violation of Section 103(5) of the PWFA, 42 U.S.C. § 2000gg-1(5), by taking adverse action in terms, conditions, or privileges of employment against the Aggrieved

Individual on account of her requesting or using a reasonable accommodation to her known pregnancy-related limitations. In particular:

    a)     The Commission repeats and incorporates herein Paragraphs 1-59, above.

    b)     After the Aggrieved Individual had requested and used reasonable accommodations for her pregnancy-related limitations, Defendant denied her employment opportunities, such as the opportunity to work as a fill-in team lead and thereby earn additional pay.

    c)     After the Aggrieved Individual had requested and used reasonable accommodations for her pregnancy-related limitations, Defendant altered the terms, conditions, and privileges of her employment, such as by assigning her tasks and work locations that were more remote, lacked appropriate women's restroom facilities, and were otherwise undesirable.

    d)     Defendant took these adverse actions against the Aggrieved Individual because she requested or used reasonable accommodations.

61.     Beginning in approximately January 2024, Defendant engaged in unlawful employment practices in violation of Section 104(f) of the PWFA, 42 U.S.C. § 2000gg-2(f), by retaliating against the Aggrieved Individual, that is, by discriminating against her because she opposed an act or practice made unlawful by the PWFA or because she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the PWFA. In particular:

    a)     The Commission repeats and incorporates herein Paragraphs 1-60, above.

    b)     After the Aggrieved Individual had requested reasonable accommodations for her pregnancy-related limitations and objected to Defendant's unlawful employment practices, Defendant denied her employment opportunities, such as the opportunity to

work as a fill-in team lead and thereby earn additional pay.

c) After the Aggrieved Individual had requested reasonable accommodations for her pregnancy-related limitations and objected to Defendant's unlawful employment practices, including by filing a charge with the EEOC, Defendant altered the terms, conditions, and privileges of her employment, such as by assigning her tasks and work locations that were more remote, lacked appropriate women's restroom facilities, and were otherwise undesirable.

d) Defendant took these actions against the Aggrieved Individual because she requested reasonable accommodations and/or because she objected to Defendant's failure to make reasonable accommodations and other PWFA violations.

62. The unlawful employment practices complained of above were intentional.

63. The unlawful employment practices complained of above were done with malice or with reckless indifference to the Aggrieved Individual's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from failing to make reasonable accommodations to the known limitations related to a qualified employee's pregnancy, childbirth, or related medical conditions.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from requiring a qualified employee affected by pregnancy, childbirth, or related medical conditions to accept an accommodation other than any reasonable accommodation arrived at through the interactive process.

C. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns,

and all persons in active concert or participation with Defendant, from denying employment opportunities to a qualified employee if such denial is based on the need to make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of the qualified employee;

      D.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from placing a qualified employee on leave, whether paid or unpaid, when another reasonable accommodation can be provided to the known limitations related to the pregnancy, childbirth or related medical conditions of the employee.

      E.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from taking any adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee.

      F.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from discriminating against any employee because such employee has opposed any act or practice made unlawful by the PWFA or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the PWFA.

      G.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals under the PWFA and that eradicate the effects of its past and present unlawful employment practices.

      H.      Order Defendant to make the Aggrieved Individual whole by providing appropriate

back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

    I.    Order Defendant to make the Aggrieved Individual whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

    J.    Order Defendant to make the Aggrieved Individual whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

    K.    Order Defendant to pay the Aggrieved Individual punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

    L.    Order Defendant to pay prejudgment interest to the Aggrieved Individual.

    M.    Grant such further relief as the Court deems necessary and proper to the public interest.

    N.    Award the EEOC its costs of this action.

## JURY TRIAL DEMANDED

The EEOC requests a jury trial on all questions of fact raised by its Complaint that do not relate solely to equitable relief.

Dated: December 19, 2025

                                      CATHERINE ESCHBACH
                                      Acting General Counsel

                                      CHRISTOPHER LAGE
                                      Deputy General Counsel

                                      GWENDOLYN YOUNG REAMS
                                      Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, D.C., 20507

GREGORY GOCHANAUR
Regional Attorney
Chicago District Office

Justin Mulaire
Assistant Regional Attorney
Chicago District Office

/s/ Greger B. Calhan
Greger B. Calhan
Trial Attorney
Minneapolis Area Office
330 South Second Avenue, Suite 720
Minneapolis, MN 55401-2224
Telephone: (612) 552-7323
E-mail: Greger.Calhan@eeoc.gov